IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TONI WILLIAMS, et al.,

    Plaintiffs,

      v.

ACCREDITED HOME LENDERS,
INC., doing business as Home Funds
Direct,

    Defendant.

CIVIL ACTION FILE
NO. 1:05-CV-1681-TWT

## ORDER

This is an FLSA action.  It is before the Court on the Plaintiffs' Motion for

Conditional Class Certification and Motion to Compel [Doc. 77].  For the reasons set

forth below, the motions are denied.

## I.  BACKGROUND

Accredited is one of the nation's largest  mortgage banking institutions with

over 2,500 employees engaged in the business of originating, financing, securitizing,

servicing, and marketing residential non-conforming mortgage loans. (Rutter Decl.,

¶ 2.) Accredited conducts its retail business in the origination of direct-to-consumer

loans secured by residential real estate as "Home Funds Direct." (Id.) In October

2005, Accredited employed approximately 375 loan officers in its retail business. (Rutter Dep. at 17.)

Before January 2004, Accredited paid its loan officers on a salary basis as exempt employees. (Brady Dep. at 31.) In January 2004, Accredited converted its loan officers to non-exempt status. (Glussman Dep. at 64.)  Since that time, loan officers have been paid a base salary converted to an hourly wage, and commissions. (Id. at 55.) If loan officers work overtime, they are paid at their respective overtime rate. (Id. at 57.)   Loan officer annual compensation varies widely from $25,000 to over $100,000. (Id.; Rutter Dep. at 29-30.) Accredited's overtime policy is set forth in the employee handbook, as well as on the company's Intranet. (Glussman Dep. at 80-81.) The policy provides:

> Overtime Pay
>
> From time to time it may be necessary for you to perform overtime work in order to complete a job on time. If you are a "non-exempt" employee, all overtime must be approved by your manager. When it is necessary to work overtime, you are expected to cooperate as a condition of your employment. You will be paid one and one-half (1-1/2) times your regular rate for overtime worked in accordance with applicable state and federal law. . . .
>
> Time Cards/Records
>
> By law, we are obligated to keep accurate records of the time worked by "non-exempt" employees. This is done by written documentation. Your attendance sheet is the only way the payroll department knows how many hours you worked and how much to pay you. Your attendance

sheet indicates when you arrived and when you departed. You are to sign in and out for lunch and for brief absences for personal business such as a doctor's or dentist's appointment. . . .   You are responsible for accurately recording all hours worked and any absences on your attendance sheet. . . .

(Williams Dep., Exh. 4, pp. 21-22.)   Pursuant to the policy, loan officers are responsible for accurately filling out their timecards and submitting them to their branch manager.  (Glussman Dep. at 73-74; Rutter Dep. at 34-35.)  Branch managers approve the timecards and submit the data to payroll.  (Glussman Dep. at 74; Rutter Dep. at 35.) Managers are instructed regarding compliance with Accredited's overtime policies on a regular basis. (Glussman Dep. at 65-66.)

Accredited regularly pays considerable overtime to its loan officers. Since their conversion to non-exempt status in January 2004, Accredited's loan officers have reported and been paid for over 37,000 hours of overtime.  (See Robinson Decl., ¶ 3.) Accredited has made over $1.4 million in overtime payments to its loan officers since January 2004.  (Id.)  Fifty Accredited loan officers have submitted declarations testifying that, consistent with Accredited policy, they always accurately report their time – and they are always properly paid overtime.

Plaintiffs Toni Williams and Kathryn Bent Longoria initiated this civil action seeking conditional certification of an opt-in class pursuant to 29 U.S.C. § 216(b). Williams claims that after January 1, 2004, as an overtime eligible employee, she was

instructed by her branch manager, Tom Shaw, not to record certain overtime hours on her timesheets. Williams alleges that she accurately recorded and submitted her timesheets to her branch manager, Tom Shaw, but that he changed them to reflect only 40 hours per week.  (Williams Dep. at 104-110.)  Shaw told her she could take "comp time" for the extra hours.   After a few weeks of properly submitting her hours, Williams alleges that she began inaccurately recording her time to reflect only 40 hours. (Id. at 134-135, 196.) Williams admits, however, that sometimes she did record and was properly paid for overtime hours – as reflected by Accredited's payroll records. (Id. at 154-56.)

Longoria, a loan officer employed in San Antonio, Texas, claims that she was not paid for overtime because she was told by her branch manager, Aaron Knodden, that he would not pay overtime, so she did not record her overtime hours on her timesheets.  If she worked extra hours, Knodden told her she would receive "comp time." (Longoria Dep. at  19, 59-60.) Longoria did not accurately record her time on her timesheets because Knodden kept track of the hours she worked, and he knew the amount of comp time she had earned. (Id. at 38.)

The Plaintiffs' lawyers have invited other current and former loan officers around the country to join this litigation, and to date over 150 have done so.  Many Opt-in Plaintiffs have executed  declarations generally  stating they "were not

compensated for the overtime hours [they] worked," and that anonymous "managers" instructed them to only record 40 hours. (<u>See</u> <u>generally</u> Plaintiffs' Exh. K.)  The Plaintiffs' proposed class would include over 1,000 current and former Accredited employees in over 70 branches in 23 states who reported to hundreds of different supervisors, and who were classified as both exempt and nonexempt during their tenure as loan officers.

## II. <u>DISCUSSION</u>

The Fair Labor Standards Act ("FLSA") authorizes collective actions as follows:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought.

29 U.S.C. § 216(b).[1]  A district court, in its discretion, may authorize the sending of notice to potential class members in a collective action in "appropriate" cases. <u>Hoffman-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 169-70 (1989); <u>Hipp v. Liberty</u>

---

[1]A collective action under Section 216(b) differs from a Rule 23 class action in that an individual does not become a party to the Section 216(b) case unless and until he gives his consent in writing to become a party, i.e., "opts-in" to the action, whereas a party must affirmatively "opt-out" of a case proceeding as a Rule 23 class action. <u>See</u> <u>Thiessen v. General Elec. Capital Corp.</u>, 267 F.3d 1095, 1102 (10th Cir. 2001).

Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); Haynes v. Singer Co., Inc.,

696 F.2d 884, 886-87 (11th Cir. 1983).  The Supreme Court has endorsed collective

actions in FLSA cases when it permits the "efficient resolution in one proceeding of

common issues of law and fact arising from the same alleged . . . activity."  Hoffman-

LaRoche, 493 U. S. at 170.

    The Court of Appeals for the Eleventh Circuit has endorsed a two-step

approach to determining whether to certify a collective action under Section 216(b).

> The first determination is made at the so-called "notice stage."  At the
> notice stage, the district court makes a decision–usually based only on
> the pleadings and affidavits which have been submitted–whether notice
> of the action should be given to potential class members.  Because the
> court has minimal evidence, this determination is made using a fairly
> lenient standard, and typically results in "conditional certification" of a
> representative class.  If the district court "conditionally certifies" the
> class, putative class members are given notice and the opportunity to
> "opt-in."  The action proceeds as a representative action throughout
> discovery.

Hipp, 252 F.3d at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207,

1213-24 (5th Cir. 1995)).

> The second determination is typically precipitated by a motion for
> "decertification" by the defendant usually filed after discovery is largely
> complete and the matter is ready for trial.  At this stage, the court has
> much more information on which to base its decision, and makes a
> factual determination on the similarly situated question.  If the claimants
> are similarly situated, the district court allows the representative action
> to proceed to trial.  If the claimants are not similarly situated, the district
> court decertifies the class, and the opt-in plaintiffs are dismissed without

prejudice.  The class representatives–i.e. the original plaintiffs–proceed
to trial on their individual claims.

Id.[2]  During the notice stage, the court should determine: (1) whether there are other

employees who wish to opt-in to the action; and (2) whether those employees are

"similarly situated" with respect to their job requirements and pay provisions.  Dybach

v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir. 1991).

    The Plaintiffs bear the burden of establishing that they are similarly situated

with the group of employees they wish to represent.[3]  Grayson v. K Mart Corp., 79

F.3d 1086, 1096 (11th Cir. 1996).  This burden, however, is not heavy.  Applying the

"fairly lenient standard" of the notice stage, plaintiffs are not required to show that

they hold identical positions but, rather, must show only that their positions are similar

to those positions held by the putative class members.  Hipp, 252 F.3d at 1217;

Grayson, 79 F.3d at 1096.  Courts have held that the notice stage requires only

"substantial allegations that the putative class members were together the victims of

---

    [2]Although  Hipp  involved  a  collective  action  brought  under  the  Age
Discrimination in Employment Act of 1967, the Eleventh Circuit has made clear that
the analysis set forth in that case applies with equal force to FLSA collective actions.
Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir.
2003).

    [3]The "similarly situated" requirement applicable to Section 216(b) collective
actions is "more elastic and less stringent than the requirements found in Rule 20
(joinder) and Rule 42 (severance)."  Grayson v. K Mart Corp., 79 F.3d 1086, 1095
(11th Cir. 1996).

a single decision, policy, or plan." Thiessen, 267 F.3d at 1102; England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 508 (M.D. La. 2005) (citation omitted); Sperling v. Hoffmann-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988).   The Eleventh Circuit has stated that "a unified policy, plan, or scheme of discrimination may not be required to satisfy" the similarly-situated requirement of Section 216(b). Hipp, 252 F.3d at 1219 (quoting Grayson, 79 F.3d at 1095).   Nevertheless, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." Marsh v. Butler County Sch. Sys., 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003); see also Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002) (putative class members must "share common identifiable facts or legal theories").

        This case has not proceeded in the two-step process endorsed in Grayson.  The Plaintiffs short circuited the process first by disseminating informal notice of the lawsuit and the opportunity to opt-in.  Without court supervised notice, about 150 current or former loan officers, have filed consent forms to opt-in as Plaintiffs.  The Defendant then sought and obtained the Court's permission to take depositions of about 20 of the opt-in Plaintiffs.  The Plaintiffs have also deposed Accredited's senior managers in the retail division.  The Court then gave the parties additional time to

brief the certification issue after having the benefit of the discovery undertaken.  So, the parties and the Court have essentially skipped the first step in the <u>Grayson</u> process.  Although the Plaintiffs now urge the Court to authorize official notice to potential class members and to postpone the ultimate certification decision until later, it is not clear what purpose would be served in doing that.  The parties have engaged in the necessary  discovery for the Court to make the decision as to whether this is an appropriate case for a collective action.

After careful consideration, the Court concludes that this is not an appropriate case for a collective action.  First, the Plaintiffs, the opt-in Plaintiffs and the proposed class members are not similarly situated.[4]  This must be determined initially by looking at the nature of the alleged claims.  In certain FLSA cases, such as where a plaintiff challenges his exempt classification, a showing of similar job requirements and pay provisions may be enough.  <u>Tucker v. Labor Leasing, Inc.</u>, 872 F. Supp. 941, 947 (M.D. Fla. 1994); <u>Dybach</u>, 942 F.2d at 1567-68.  That is not the type of claim being made here.

---

[4]The similarity requirement must be applied with some rigor in a case such as this where there are as many as 1,000 potential plaintiffs.  There is a world of difference between an FLSA case like this and an age discrimination case like <u>Grayson</u> where there are many fewer but much larger individual claims.

The Plaintiffs, the majority of the Opt-in Plaintiffs, and the vast majority of those current and former employees in the proposed class are alleging that Accredited's branch managers violated the company's established overtime and timekeeping policies by requiring loan officers to work "off-the-clock."  Liability cannot be determined by considering the employee's job duties.  Rather, every employee must testify about his awareness of the overtime policy, and his violation of that policy – and whether it was compelled by his or her branch manager.  In other words, there must be a fact-specific, individualized inquiry into each Plaintiff's day-to-day activities.  The Plaintiffs – perhaps unintentionally – concede this when they propose to prove the case at trial by "computer activity reports, date and time stamped email, and phone records proving that Plaintiffs were working before and after the times recorded on their timesheets."  (Plaintiffs' Reply at 2.)  The Plaintiffs, the opt-ins and the proposed class members are not sufficiently similarly situated for a nationwide collective action.

Second, the Plaintiffs have not shown a common policy that violates the FLSA. "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." England v. New Century Financial Corp.,  370 F. Supp. 2d 504, 507 (M.D. La. 2005).  It is undisputed that  Accredited has paid more than $1.4

million in overtime to its loan officers for more than 37,000 overtime hours in the last two and a half years.  This  demonstrates that at least some of the company's loan officers and their managers have been complying with its overtime policy.  Fifty Accredited loan officers have submitted declarations to the Court testifying that they have always been properly paid for the overtime they have worked and have always accurately recorded their time.  (See Kitces Decl., Exh. 1.)  Therefore, the best that can be said of the Plaintiffs' case is that some loan officers were paid overtime and some were not.  If this case goes forward as a collective action, an individualized inquiry into why some were not paid overtime is required.  The Plaintiffs have not met their burden of making a rudimentary showing of commonality among the claims.

Finally, this is not an appropriate case for a collective action because it is utterly unmanageable.  The Plaintiffs propose to prove hundreds of small overtime claims by "computer activity reports, date and time stamped email, and phone records proving that Plaintiffs were working before and after the times recorded on their timesheets." (Plaintiffs' Reply at 2.)  Presumably, this must be done for hundreds of loan officers for every day for a two year period.  The cost to the parties of the discovery required to prepare for this is mind-boggling.  The waste of scarce judicial resources of conducting such a trial would be unconscionable.  The proposed collective action does

not permit the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity.

### III.  CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion for Conditional Class Certification [Doc. 77] is DENIED.  The claims of all remaining opt-in Plaintiffs are dismissed without prejudice.  The discovery sought by the original Plaintiffs is unnecessarily burdensome and expensive given the claims remaining in the case.  The Motion to Compel [Doc. 77] is DENIED.

SO ORDERED, this 25 day of July, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge